UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| KRISTINA CARTER ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 12-CV-3244 |
| ) | |
| UNION PACIFIC RAILROAD ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

Plaintiff, Kristina Carter, filed her Complaint (#2-1) on July 12, 2012, alleging that Defendant, Union Pacific Railroad Company, was negligent in its ownership, operation, maintenance, and construction of a railroad crossing. The case is currently before this court on Defendant's Motion to Bar Plaintiff's Expert Thomas Berns (#19), Motion to Strike Memorandum in Opposition to Defendant's Motion to Bar (#25), and Motion for Summary Judgment (#21). This court has carefully reviewed the arguments of the parties and the documents filed by the parties. For the following reasons Defendant's Motion to Bar Plaintiff's Expert (#19) is GRANTED in part and DENIED in part. In addition, Defendant's Motion to Strike (#25) is DENIED and Defendant's Motion for Summary Judgment (#21) is GRANTED.

BACKGROUND

On the afternoon of September 6, 2010, Plaintiff and Martin Prescott headed to a cookout hosted by Prescott's friend. On their way to the cookout, Prescott, who was driving the vehicle, turned onto a country road. Plaintiff and Prescott stated that they were not familiar with the

road they were on and neither could name the road during their deposition. While on the road, Prescott drove over a set of railroad tracks. Neither Plaintiff nor Prescott recalled seeing any signs denoting the presence of railroad tracks. Plaintiff first noticed the railroad tracks when they drove over them, and Prescott first saw the tracks when they were 50 feet away. Prescott was driving approximately 45 to 55 miles per hour when they crossed the tracks. As they crossed, they encountered a bump and Plaintiff hit her head on the top of the vehicle. Thereafter, Plaintiff claims that she started feeling severe pain in her back. After Plaintiff and Prescott crossed the railroad tracks, Prescott turned the vehicle around in order to take Plaintiff back to her house. Later that night, paramedics were dispatched to Plaintiff's home after she called 911 complaining of back pain.

On January 30, 2013, Plaintiff visited a railroad crossing and took photographs. The photographs were attached to her February 19, 2013 affidavit (#27-1). Thereafter, Plaintiff signed the affidavit, stating that the attached group of photographs fairly and accurately depicted the location where her injury occurred.

Plaintiff hired Thomas Berns as an expert. Berns is a licensed professional engineer in the states of Illinois, Missouri, Indiana, Arkansas, and Iowa. He is a licensed professional land surveyor in the states of Illinois and Arkansas. Berns is also the President of the engineering, surveying, and planning professional corporation Berns, Clancy & Associates, PC. On August 10, 2011 and September 2, 2011, Berns examined a set of railroad tracks identified to him as the tracks Plaintiff and Prescott crossed. Following his examination, Berns prepared three drawings documenting the height, grade, and survey data he collected relating to the crossing. The drawings reflect that an individual approaching the tracks would experience an incline grade of

5% followed by an immediate decline grade of 7.3%. His report stated that his review of the site led him to conclude that the crossing was extra hazardous at the time of the accident and that the installation of flashing light signals with short-arm gates and a reconstruction of the approaches along with advanced warning signs were needed to inform the public of the anticipated hazards at the crossing. Berns further stated that the crossing should have provided appropriate warnings for the traveling public in compliance with "Title 92 Transportation Chapter III; Illinois Commerce Commission Subchapter; Rail Carriers Part 1535 Crossings of Rail Carriers and Highways." The Report also listed five opinions Berns formed after his evaluation of the crossing:

    A.    The visual grade approach is misleading and warning signs should have been placed so as to warn the traveling public as to the dangerous condition.

    B.    The existence of the grain truck exit from the "Toloma Farmers Allen Station" grain elevator should have been provided with warning signs to provide notice to the traveling public of the grades, roughness, and special nature of the vehicular traffic at this railroad / highway grade crossing.

    C.    The physical nature and physical features of this railroad / highway grade crossing include the special exit from the large truck grain elevator at this intersection and numerous railroad tracks.

    D.    The nature of the physical features and the grades at this railroad / highway grade crossing were not apparent to the traveling public. Warning signs

3

        for the grades and the crossing discontinuities should have been properly provided to the general public to identify the special circumstances and relationships at this site.

    E.    Based upon my field surveys, it is clear that the existing railroad / highway grade crossing in this case was not in compliance with Title 92 Transportation Chapter III; Illinois Commerce Commission Subchapter; Rail Carriers Part 1535 Crossings of Rail Carrier and Highways. These standards provide guidance to the traveling public in various circumstances particularly with extra-ordinary highway traffic and awkward physical features.

Berns testified during his deposition that additional warning signs were needed at the crossing because the roadway at the crossing was relatively narrow; large trucks entered and exited the highway near the crossing; and the crossing itself presented a steep incline. When asked to identify any books, articles, or other reference which he used to formulate his opinions in this case, Berns stated that he was not sure whether he could point his finger to any specific spot, but noted that the answers could be found somewhere in his library. He also testified that he is not a legal expert trained to interpret what the law requires at a crossing. He further noted that it is his understanding that the railroad company is not allowed to alter or change the signage at any crossing or install flashing lights and gates without the order of the Illinois Commerce Commission.

Plaintiff has also compiled potential testimony from doctors who treated her following

the September 6, 2010 incident.   According to Plaintiff, Dr. Stephen J. Pineda is expected to testify that Plaintiff was injured after a vehicle drove over a set of railroad tracks, became airborne, and landed heavily upon the roadway.   As a result of the incident, Plaintiff suffered a fracture in or around the L1 region of her lower back.   Plaintiff claims that Dr. Pineda will testify that her injuries were a direct result of the aforementioned automobile incident.   Dr. Koteswara Narla is also expected to testify that Plaintiff was traveling in a vehicle that went over railroad tracks and became airborne causing Plaintiff to suffer an L1 burst fracture.   Plaintiff further expects Dr. Jarrod Wall to state that Plaintiff was the passenger in a vehicle that went over railroad tracks and that she struck her head and suffered an L1 burst fracture as a result.

Defendant produced a May 12, 2005 report from the Illinois Commerce Commission which stated that the roadway around the crossing was narrow but that it met the minimum width required by 92 IL ADC § 1535.   The report also suggested that the crossing be resurfaced.  Defendant resurfaced the crossing in November, 2009.

## THE INSTANT LITIGATION

Plaintiff's Complaint (#2-1) alleged that Defendant was negligent in the following ways:

a. Negligently and carelessly owned, operated and maintained a railroad crossing that was defective and in an unreasonably dangerous condition in that it created a steep incline followed immediately by a 7.5% decline;

b. Negligently and carelessly construed and maintained a grade crossing in such a manner that it interfered with the reasonably safe use of the roadway by travelers using the said roadway in a usual and ordinary manner in violation of Title 92 Transportation Chapter III, Illinois Commerce Commission Subchapter, and Rail

    Carriers Part 1535.203 Crossing of Rail Carrier and Highways;

c. Negligently and carelessly failed to conform the surface of the roadway to the elevation of the rails for the entire area between rails and tracks in violation of Title 92 Transportation Chapter III, Illinois Commerce Commission Subchapter, and Rail Carriers Part 1535.203 Crossing of Rail Carrier and Highways; and

d. Negligently and carelessly permitted the level of hazard present at the railroad-highway grade crossing to be more hazardous than could be reasonably expected by motorists.

As a direct result of this negligence, Plaintiff alleges that she suffered severe and permanent injuries to her body including a severe fracture to her L1 vertebrae which caused permanent damage and a condition forcing her to wear a permanent catheter due to an uncontrollable bladder.   Further, Plaintiff claims that she suffers from severe emotional distress. Defendant filed its Motion to Bar Plaintiff's Expert Thomas Berns (#19) on December 12, 2013, and Plaintiff filed her Response (#23) on December 30, 2013.   Defendant's Motion for Summary Judgment (#21) was filed on December 12, 2012, and Plaintiff filed her Response (#26) on January 3, 2014.   Defendant's Motion to Strike Plaintiff's Memorandum in Opposition to Defendant's Motion to Bar (#25) was filed on January 3, 2014, and Plaintiff's Response (#28) was filed on January 15, 2014.   All motions are fully briefed and ready to be ruled upon.

## ANALYSIS

### I.  MOTION TO STRIKE

On January 3, 2013, Defendant filed a Motion to Strike (#25) and asked this court to strike Plaintiff's Memorandum (#24) in Opposition to Defendant's Motion to Bar Plaintiff's

Expert. Defendant argued that Plaintiff's Memorandum was filed beyond the allowable time. This court notes that motions to strike are generally disfavored. *See Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258*, 688 F. Supp. 2d 815, 830 (C.D. Ill. 2010). The Seventh Circuit has expressed the opinion that motions to strike "are not only unnecessary (from the parties' perspective) but also pointless (from the judiciary's)." *Custom Vehicles, Inc. v. River Forest, Inc.*, 464 F. 3d 725, 727-28 (7th Cir. 2006).

After careful consideration, this court does not agree with Defendant that Plaintiff's Memorandum was untimely. Plaintiff submitted her Response and Memorandum on December 30, 2013. That date is listed on the docket as the date Plaintiff's response was due. Therefore, the response and memorandum were timely filed. Defendant's Motion to Strike Memorandum in Opposition to Plaintiff's Motion to Bar (#25) is DENIED.

## II. MOTION TO BAR EXPERT

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in federal courts and establishes two general admissibility requirements for expert testimony: "(1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case." *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000). The testimony must also be: (1) based upon sufficient facts or data; (2) the product of reliable procedures or methods; and (3) applied reliably to the facts of the case. Fed.R.Evid. 702.

The United States Supreme Court has emphasized that a district court must act as a gatekeeper in ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). The

Seventh Circuit has interpreted *Daubert* to require a district court to undertake a two-step inquiry. *O'Conner*, 13 F.3d 1090, 1106 (1994). First, the court must determine whether the expert's testimony pertains to scientific knowledge. *O'Conner*, 13 F.3d at 1106. This task requires the court to "consider whether the testimony has been subjected to the scientific method; it must rule out 'subjective belief or unsupported speculation.' " *O'Conner*, 13 F.3d at 1106. Second, the district court must determine whether the evidence or testimony is relevant, that is, whether it assists the trier of fact in understanding the evidence or in determining a fact in issue. *O'Conner*, 13 F.3d at 1106.

Defendant argues that Plaintiff's expert Thomas Berns is not qualified to determine whether the railroad crossing at issue complied with the required standards or regulations; his opinions are not supported by the facts or applicable rules, standards, or regulations; and they will not assist the trier of fact. Plaintiff contends that the Berns' opinions are relevant, supported by the facts, and will assist the trier of fact.

As an initial matter, this court notes that Berns is qualified as an expert in professional and traffic engineering. This finding is supported by Berns' curriculum vitae (#24-1) and his testimony. Therefore, this court's inquiry will focus on whether Berns' opinions relate to his field of expertise and consist of specialized knowledge that will assist the trier of fact. Berns' opinions are outlined in a report (#20-1) and three technical drawings (#24-3). The court has carefully reviewed each opinion in making its determination.

Berns' report opines that the crossing at issue was extra hazardous and Defendant should have provided additional warning signs. Defendant argues that these opinions are not relevant because Defendant did not have a duty to install appropriate signage at the crossing. Under

Illinois law, hazard markers and advance warning signs at railroad crossings are to be furnished and installed by the public authority responsible for the highway upon which the signs are located. See 92 IL ADC § 1535.604; 1535.310(b). However, despite these rules, Illinois courts have stated that the failure of the Illinois Commerce Commission to provide signs does not relieve railroads of negligence in not providing appropriate devices. *See Brennan v. Wisconsin Cent. Ltd.*, 591 N.E. 2d 494 (1992). Still, even if Defendant had a duty to post additional warning signs at the crossing, this court must determine whether Berns' opinions on the subject are admissible as expert testimony.

Berns' report stated that the railroad crossing was extra hazardous. In addition, Berns' opinions as outlined in letters A, B, and D of his report note that the crossing needed additional signs alerting the public to the dangerous condition of the crossing, the existence of a grain truck exit, and the nature of the grades and the crossing discontinuities. During his deposition, Berns stated that these opinions were based on his observations that the roadway at the crossing was relatively narrow; large trucks entered and exited the highway near the crossing; and the crossing itself presented a steep incline.

Defendant argues that these opinions are analogous to the opinions barred in *Brown v. Illinois Cent. R. Co.*, 705 F.3d 531 (5th Cir. 2013). In that case, the plaintiff's expert also opined that a crossing was extra hazardous and needed warning signs. The expert's opinion was based on the facts that the crossing was extremely narrow, the surface was not smooth, and the roadway leading up to the crossing had a steep incline. *Brown*, 705 F.3d at 536. The expert stated that his ultimate conclusion that the crossing was hazardous and needed additional signs was based on his education and experience. Brown, 705 F.3d at 536-37. The district court

barred the expert's testimony after it determined that his opinions were not based on a reliable methodology. *Brown*, 705 F.3d at 536.

This court finds Berns' opinion that the crossing was extra hazardous as well as his specific opinions found in letters A, B, and D of his report (#20-1), similar to the opinions advanced in *Brown*. During his deposition, Berns was asked to identify any book, article, or any other reference that he utilized to formulate these opinions. Berns stated that he was not sure whether he could point his finger to any specific spot, but noted that the answers could be found somewhere in his library. In affirming the district court's decision in *Brown*, the Fifth Circuit noted that it has long held "[w]ithout more than credentials and a subjective opinion, an expert's testimony that 'it is so' is not admissible." *Brown*, 705 F.3d at 537. Because Berns has failed to point to any reliable methodology that would explain why the conditions he witnessed at the crossing made it extra hazardous, we find those opinions subjective and conclusory. *See Clark v. Takata Corp.*, 192 F.3d 750, 756 (1999) (an expert must substantiate his opinion, and not simply provide the ultimate conclusion without analysis). Therefore, this court finds that Berns' opinions relating to the hazardous condition of the crossing and the absence of warning signs, as outlined in letters A, B, and D of his report (#20-1) must be barred.

Berns also opined in his report that additional warning signs and flashing lights and gates were needed at the crossing in order to comply with Illinois law. Defendant argues that Berns was retained as a professional and traffic engineering expert, not as an expert on the laws and regulations of Illinois. Therefore, Defendant argues that Berns is not qualified to give opinions relating to Defendant's compliance with Illinois law. Nothing in Berns' report or his testimony indicates that he has any expertise in the law. In fact, Berns testified that he was not a legal

expert and was not trained to interpret what the law and regulations require. Because of this, this court finds that Berns is not qualified to advance an opinion that additional warning signs were necessary for compliance with Illinois law. Because Berns is not qualified as a legal expert, his opinions relating to Defendant's compliance with the law with respect to proper warning signs must be barred.

Another of Berns' opinions states that the railroad crossing grade and measurements did not comply with the applicable law. As stated above, Berns was not qualified as a legal expert and his opinions regarding Defendant's compliance with the law are not admissible. Therefore, Berns' opinion as outlined in letter E of his report (#20-1) must be barred.

The final opinion in Berns' report notes that the physical nature of the railroad crossing includes the exit from a large truck grain elevator and numerous railroad tracks. Nothing within the opinion requires the expertise of a professional engineer. Therefore, Berns' opinion stated in letter C of his report (#20-1) does not relate to scientific or specialized knowledge that would be helpful or essential to the trier of fact. As such, that opinion is also barred. See *O'Conner*, 13 F.3d at 1106; *Lanzotti*, 205 F.3d at 956.

Aside from the report, Berns' also prepared three technical drawings of the railroad crossing at issue in this case. The drawings contain Berns' opinion regarding the height, grade, and survey data relating to the crossing. Defendant claims that these opinions are also similar to those found in *Brown*, 705 F.3d 531. This court disagrees. Berns' hands-on evaluation of the site distinguishes the opinions advanced in his drawings from the opinions in *Brown*. Berns' testified that he prepared the drawings after performing an inspection of the crossing on two separate occasions. In order to formulate the information contained in the drawings, Berns' and

his crew performed survey analysis of the site. Therefore, because the drawings related to Berns professional training and were a result of his personal testing, this court concludes that his opinions detailed in the three drawings are admissible.  *See Clark*, 192 F.3d at 758 (hands-on testing suffices as a reasonable methodology for an opinion).

      Based on the foregoing, Defendant's Motion to Bar Plaintiff's Expert Thomas Berns (#19) is GRANTED in part and DENIED in part.   Berns' opinions contained in the three technical drawings are admissible.   However, the opinions found in his report (#20-1) are inadmissible and barred.

## III. SUMMARY JUDGMENT MOTION

### A. SUMMARY JUDGMENT STANDARD

      Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).   In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).   In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772 (7th Cir. 2012). However, a court's favor toward the nonmoving party does not extend to drawing inferences supported by only speculation or conjecture.  *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012).   To show that there is a "genuine" issue and therefore successfully oppose a

motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013), *quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present "definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002), *quoting EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

## B. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant argues that it is entitled to summary judgment on Plaintiff's claim because Plaintiff failed to properly identify the crossing; failed to produce any admissible evidence that it was negligent with regard to the design or maintenance of the crossing; and failed to produce any admissible evidence that Plaintiff's injuries were proximately caused by the alleged negligence of Defendant. This court agrees that Defendant is entitled to summary judgment.

There is no dispute that Illinois law governs the extent of Defendant's liability in this diversity action. *See Reid v. Kohl's Dep't Stores, Inc.*, 545 F.3d 479, 481 (7th Cir. 2008). In order to establish negligence, a plaintiff must demonstrate the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Marshall v. Burger King Corp.*, 856 N.E. 2d 1048, 1053 (Ill. 2006).

In this case, Plaintiff claims that Defendant was negligent in its construction and maintenance of a railroad crossing. Plaintiff's claims are based on § 1535.203 of the Illinois Administrative Code (Code). With regards to Defendant's negligence in constructing the crossing, this court finds Defendant had no duty to construct or conform the crossing to comply with § 1535.203. The crossing in question was constructed prior to December 15, 2005. As

such, the specifications of the crossing were approved by § 1535.20 of the Code subject to the Illinois Commerce Commission's right to require changes or improvements.   92 IL ADC § 1535.20.   In November, 2009, Defendant resurfaced the crossing pursuant to a request from the Illinois Commerce Commission.   The record does not contain any other requests for improvement.   Therefore, based on § 1535.20 and the lack of any unfulfilled requests from the Illinois Commerce Commission, Defendant was not under any duty to construct or conform the crossing to the new standards promulgated on December 15, 2005.   See 92 IL ADC § 1535.10 *et seq*.   Thus, Plaintiff cannot succeed on a claim of negligence which assumes Defendant had a duty to construct or conform the crossing in a specific manner.

With regards to Defendant's duty to maintain the tracks in such a way that it would not interfere with the reasonably safe use of the roadway, this court finds that Plaintiff has failed to produce any admissible evidence supporting a breach of that duty.   This court has ruled that Plaintiff's proffered exert testimony by Berns regarding Defendant's failure to comply with the proper law and regulations for a crossing is inadmissible.   This court has also ruled that Berns' opinions that the crossing was extra hazardous and that it required more signs were conclusory and inadmissible.   The only admissible evidence relating to the condition of the crossing is Berns' survey data and Plaintiff's and Prescott's testimony.   While this evidence sheds light on the physical description of the crossing, it does not establish a breach by Defendant in keeping the crossing reasonably safe.   Importantly, Plaintiff has produced no admissible evidence to establish that the measurements calculated by Berns support a finding that the crossing was unsafe or in any way different than a normal railroad crossing.   Even when viewed in a light most favorable to Plaintiff, the admissible evidence in this case would force this court to

speculate that Plaintiff's injuries were caused by Defendant's failure to maintain the crossing as required by law. See *Harper* 687 F.3d at 306 (a court's favor toward the nonmoving party does not extend to drawing inferences supported by only speculation or conjecture). Therefore, Plaintiff has not established a breach of Defendant's alleged duty to maintain the crossing in violation of any law or regulation.

Because this court concludes that the facts do not support a duty by Defendant to construct or conform the crossing nor do they support a breach of a duty to maintain the crossing, summary judgment is warranted.[1]

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Bar Plaintiff's Expert Thomas Berns (#19) is GRANTED in part and DENIED in part.

(2) Defendant's Motion to Strike Memorandum in Opposition to Defendant's Motion to Bar (#25) is DENIED.

(3) Defendant's Motion for Summary Judgment (#21) is GRANTED. Judgment is entered in favor of Defendant and against Plaintiff.

ENTERED this 28th day of April, 2014.

s/ COLIN S. BRUCE
U.S. DISTRICT JUDGE

---

[1] This court notes that it is troubled by the fact that neither Plaintiff nor Prescott could identify the road that the crossing was on during their depositions. Nonetheless, in making the above findings, this court considered that the crossing listed in Plaintiff's affidavit was the crossing she and Prescott traveled over on September 6, 2010. Had summary judgment not been warranted for the reasons stated, this court may have determined that Plaintiff failed to produce sufficient evidence to show that the crossing listed in the complaint was the crossing she and Prescott passed over on September 6, 2010.